LOTTINGER, Judge.
This is a suit for damages resulting from an automobile accident. The petitioner is Douglas P. Reynolds, who was, at the time of the accident, riding as a guest passenger in an automobile owned and operated by Claude E. Dake. The defendants are the Maryland Casualty Company, the liability insurer on the Dake automobile, and the Hardware Mutual Casualty Company, the liability insurer of an automobile driven by Mrs. Lester Bloomenstiel, the driver of the other vehicle which was involved in the accident. Trial below was before a jury, which returned a verdict of negligence on the part of both Mr. Dake and Mrs. Bloomenstiel, and awarded judgment in the amount of Eighteen Thousand and No/100 ($18,000.00) Dollars, the Court rendered judgment in solido against both insurance companies for the sum of Five Thousand and No/100 ($5,000.00) Dollars which was the policy limit on the Maryland Casualty Company policy, and against Hardware Mutual Casualty Company for the additional sum of Thirteen Thousand and No/100 ($13,000.00) Dollars. Both defendants have appealed.
The accident in question occurred on November 6, 1963 at approximately 1:30 o’clock P.M. at the intersection of Perkins Road and Essen Lane in the Parish of East Baton Rouge, Louisiana. The weather was clear and both streets are hard surfaced. Perkins Road runs generally north and south, and Essen Lane runs generally east and west. The east-west road is known as Essen Lane to the east of Perkins and as Starring Lane to the west of Perkins Road. Proceeding westerly along Essen Lane there is a stop sign some three feet from the intersection with Per *414 kins Road and there is a red blinking light hanging in the center of the intersection. The blinking light is yellow for traffic on Perkins Road.
The evidence discloses that a short time prior to the accident Mrs. Bloomenstiel and her passenger, Miss Rose Rosenberg were proceeding in a northerly direction along Perkins Road at a speed of approximately 50 miles per hour. Upon entering a “banana type” curve Mrs. Bloomen-stiel testified that she looked at her speed indicator which showed her to be traveling at 50 miles per hour. Upon approaching the intersection, she testified that she slowed her speed, and although she did not again look at her speed indicator, she assumed that she was traveling from 40 to 45 miles an hour prior to applying her brakes. Upon noticing the emergency created by the Dake automobile, Mrs. Bloomenstiel applied her brakes and skidded for approximately 90 feet prior to the impact and for a distance of approximately 18 feet after the impact. According to her testimony, she did not notice the Dake automobile until it pulled out into Perkins Road, and that she could not turn to the left to avoid the collision because of oncoming traffic. Mrs. Bloomenstiel was well familiar with the intersection and knew that traffic proceeding west on Essen Lane was faced with a stop sign and a blinking red light.
Prior to the impact Mr. Dake and petitioner, as guest passenger, were proceeding in a westerly direction along Essen Lane and proposed to cross Perkins Road and continue westerly along Starring Lane. Both gentlemen testified that the Dake vehicle stopped abreast of the stop sign as there was an automobile proceeding southerly along Perkins Road at a distance of approximately 300 feet. Both also testified that the vehicle was brought to a complete stop as it was a Volkswagen bus and it was necessary to bring it to a complete stop in order to change the gear to first. Petitioner and Mr. Dake testified that while they were thus stopped the said automobile proceeding southerly along Perkins Road made a sharp turn to the left to enter Essen Lane, and, in cutting so sharply both Mr. Dake and petitioner thought that this vehicle would strike the Volkswagen, so Mr. Dake pulled his car to the right against the curb and again stopped with the left front portion of the Volkswagen protruding approximately one foot into Perkins Road. Both occupants of th Dake Volkswagen testified that the vehicle in which they were riding was still stopped in this position at the time of the impact.
Petitioner and Mr. Dake were the only witnesses to the accident who testified to the effect that there was a Pontiac automobile driven by young Negroes who made a sharp turn in front of the car in which they were riding, causing Mr. Dake to pull forward and to the right, into Perkins Road, to avoid his vehicle being hit by the Pontiac. Mrs. Bloomenstiel testified that she did not see a Pontiac turn left in front of her and that, had there been a Pontiac present, she would have seen it. Mr. Miles Pollard, as well as his son Miles Pollard, Jr., were both traveling in a southerly direction along Perkins Road at the time of the impact. Upon noticing the pending crash, Mr. Pollard slowed his vehicle as he was afraid that the Bloomenstiel Cadillac might cut to the left to avoid hitting the Volkswagen and to be run headon. Both Mr. Pollard and his son testified that there was no car which turned left in front of the Dake Volkswagen. They further testified that the Volkswagen did not stop preparatory to entering the intersection and it just “sort of hesitated”.
Mrs. Bloomenstiel testified that she did not notice the Volkswagen until it pulled into the intersection, at which time she immediately applied her brakes in order to stop. The petitioner alleges that Mrs. Bloomenstiel was driving at an excessive rate of speed at the time of the accident. We do not believe such to be the case. The State Patrolman who testified at the trial gave the speed limit for traffic along *415 Perkins Road at 60 miles per hour. He testified that in his estimation Mrs. Bloom-enstiel was going somewhere from 40 to SO miles an hour prior to applying her brakes. According to the speed chart as was used by this Court in Randall v. Baton Rouge Bus Company, La.App., 114 So.2d 98, at page 113 it would appear that the speed driven by Mrs. Bloomenstiel prior to applying her brakes was in the range from 40 to 50 miles an hour. For a vehicle driven at 40 miles per hour the braking distance, according to State’s Driver’s Guide is 82 feet, Blashfield’s Automobile Law fixes it at 71 feet and Lawyer’s Motor Vehicle speed chart lists it at 147.8 feet. For a vehicle driven at 50 miles per hour, these three authorities fix the braking distance at 128 feet, 111 feet and 175 feet respectively. Of course these distances vary due to the condition of the weather, the type of roadway as well as the condition of the vehicle. Under the circumstances, we find that the record fails to reflect that Mrs. Bloomenstiel was exceeding the speed limit, nor was she driving at an excessive rate of speed. The mere fact that there was a blinking caution light before her did not, of itself show that she was speeding or driving recklessly. All the witnesses testified that there was no heavy traffic at the time. Furthermore the evidence discloses that Mrs. Bloomen-stiel was well aware of the intersection, and that she knew that traffic approaching the intersection on Essen Lane was faced with both a stop sign and a blinking red light. In Smith v. Insurance Co. of State of Pennsylvania, La.App., 161 So.2d 903, the Court stated:
“All counsel concede applicability of the rule that a motorist traveling upon a right of way street or thoroughfare is entitled to assume that vehicle on subordinate roadways will respect his superior right of way. Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849; Walker v. State Farm Mutual Automobile Ins. Co., La.App., 137 So.2d 685. It is equally well settled that a motorist is entitled to rely upon such presumption until, in the exercise of ordinary, reasonable care he sees or should see that the motorist on the inferior highway will not yield the right of way. Randall v. Baton Rouge Bus Co., Inc., 240 La. 527, 124 So.2d 535. In such instances each case must be decided in the light of its own peculiar facts and circumstances. Randall v. Baton Rouge Bus Co., Inc.”.
Mrs. Bloomenstiel did not see that the Volkswagen would not yield her the right of way until it pulled into Perkins Road, at which time she took such action as she thought appropriate to attempt to avoid the accident. Until she saw the emergency created by the Volkswagen, she had a right to presume that traffic on the inferior thoroughfare would yield her right of way. We, therefore, find no negligence on the part of Mrs. Bloomenstiel.
With regard to the question of negligence on the part of Mr. Dake, we feel that the accident was caused solely by his negligence in pulling into Perkins Road in the face of oncoming traffic. We are not impressed with the testimony of petitioner and Mr. Dake with regard to the alleged Pontiac automobile which made a sharp left turn directly in front of the Volkswagen. This alleged Pontiac was not seen by Mrs. Bloomenstiel nor by either of the Pollards who had a clear and unobstructed view of the scene. The Pollards were unbiased witnesses, and they both testified that had there been such a vehicle they would have seen it.
The defendant Maryland Casualty Company alleges, however, that the testimony of the petitioner amounted to a judicial confession insofar as any negligence of Mr. Dake is concerned. Article 2291 of the Louisiana Civil Code provides as follows:
“The judicial confession is the declaration which the party, or his special at *416 torney in fact, makes in a judicial proceeding.
It amounts to full proof against him who has made it.
It can not be divided against him.
It can not be revoked, unless it be proved to have been made through an error in fact.
It can not be revoked on a pretense of an error in law.”
In Franklin v. Zurich Insurance Company, La.App., 136 So.2d 735, we held that the wife of the driver of the vehicle exonerated her husband from any negligence as her entire testimony was completely consistent and unequivocal with regard to his lack of negligence. We believe that the testimony of the petitioner does exonerate the driver of the vehicle in which he was riding from any negligence as it is the sum and substance of petitioner’s testimony that Mr. Dake stopped abreast of the stop sign before entering Perkins Road and that faced by the sudden emergency of the Pontiac vehicle making a sharp left turn directly in front of him, thus requiring him to pull forward and to the right to avoid being struck by the turning vehicle. Such testimony on the part of petitioner tended to exonerate Mr. Dake of any negligence. Under the clear provisions of the second paragraph of Article 2291 we find that if the testimony of the petitioner is consistent and it does not vary or contradict itself, even though it is contrary to the physical facts or other testimony, it is a judicial confession against that particular petitioner whose testimony exonerates that particular defendant. Although the physical facts and the other testimony would show that Mr. Dake was guilty of negligence which was the proximate cause of the accident, the provisions of the Civil Code Article exonerates Mr. Dake and his insurer from any liability to petitioner.
For the reasons hereinabove assigned the judgment of the Lower Court will be reversed and there will be judgment herein in favor of defendants and against petitioner dismissing petitioner’s action.
Judgment reversed.